UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANKIE LEE TURK,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:15-CV-0601

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Frankie Turk seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 48 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.34, 74.) He graduated high school, and was previously employed as a warehouse clerk and drywall finisher. (PageID.67, 156.) Plaintiff applied for benefits on September 17, 2012, alleging that he had been disabled since January 1, 2007, due to a lumbar spine impairment, severe back pain, brittle diabetes, and high blood pressure. (PageID.74, 139–40.) Plaintiff's application was denied on December 14, 2012, after which time he requested a hearing before an ALJ. (PageID.83–95.) On January 7, 2014, Plaintiff appeared with his counsel before ALJ Kathleen Eiler for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE).

(PageID.51–71.) In a written decision dated March 7, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.34–49.) On April 10, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.28–32.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on March 31, 2012. (PageID.74). Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Eiler determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged disability onset date through his date last insured. (PageID.39.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease; (2) diabetes mellitus; and (3) hypertension. (PageID.39.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.40.) At the fourth step, the ALJ found that through the date last insured, Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except he could have only occasionally pushed/pulled with his bilateral lower extremities. He could never have climbed ladders, ropes, or scaffolds. The claimant could have frequently climbed ramps and stairs and frequently balanced, stooped, kneeled, crouched, or crawled. He must have avoided all exposure to vibration and workplace hazards.

(PageID.40.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.43.) At the fifth step, the ALJ questioned the VE

4

to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following positions that Plaintiff could perform: counter clerk (3,000 jobs in Michigan and 111,000 national jobs), assembler (19,000 jobs in Michigan and 440,000 national jobs), and information clerk (2,400 jobs in Michigan and 86,000 national jobs). Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.44–45.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his onset date through the date last insured. (PageID.45.)

## DISCUSSION

### 1. The ALJ Provided Good Reasons For Giving Limited Weight To Dr. Deborah Warren's Opinion.

On October 14, 2012, Dr. Deborah Warren, Plaintiff's treating physician, completed a Multiple Impairment Questionnaire concerning Plaintiff's impairments. (PageID.216–23.) Dr. Warren noted that Plaintiff was diagnosed with lumbar radiculopathy, diabetes, and hypertension. (PageID.216.) In support of these diagnoses, the doctor indicated that Plaintiff's spine was tender to palpation from the T8 to L4 vertebrae. Plaintiff had a limited range of motion in all directions, reduced reflexes in his left ankle, and a reduced strength and dorsiflexion in his left foot. The doctor also noted Plaintiff had a MRI on August 12, 2010, that indicated disc bulging at L4-5 with foraminal encroachment and facet degenerative changes. (PageID.216–17.) She noted Plaintiff had a constant aching pain in his low back, hips, thighs. (PageID.218.) After providing these diagnoses, Dr. Warren opined that Plaintiff could only sit for two hours total in an eight hour

workday, and stand or walk for only one hour in a workday. (PageID.218.) Plaintiff would need to be able to get up and move around every thirty minutes. While he could frequently lift and carry up to ten pounds, he could only occasionally lift and carry between ten and fifteen pound weights. (PageID.219.) Dr. Warren further opined that Plaintiff's symptoms would frequently interfere with his attention and concentration. (PageID.221.) He would need to take unscheduled breaks, lasting thirty minutes each, two to three times a day, and could be expected to be absent from work more than three times a month. (PageID.221.) He would further be unable to push, pull, kneel, bend, or stoop. (PageID.221.) Finally, Dr. Warren opined that Plaintiff's limitations were present as of December 2009, and "possibly" three years before that. (PageID.221.) The ALJ assigned only "limited weight" to the opinion. (PageID.43.) Plaintiff argues the ALJ erred in failing to give the opinion controlling weight.[2]

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart,* 710 F.3d at 375–76

---

[2]On August 6, 2012, Dr. Warren also opined that she believed Plaintiff was unable to work and that he had been unable to do so for the last two years. She expected that even with full medical care, Plaintiff would be unable to return to work for at least a year. (PageID.201.) The ALJ assigned limited weight to this opinion as well, noting that the doctor was commenting on an issue reserved to the Commissioner. (PageID.42–43.) The record also contains a June 9, 2014 letter by Dr. Warren that was not presented to the ALJ in which Dr. Warren offered a similar opinion as the one raised above. (PageID.356.) Plaintiff has not requested a sentence six remand for consideration of this letter, nor challenged the ALJ's discussion of the August 6, 2012, letter.

6

(quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The ALJ noted that the limitations provided by Dr. Warren were "not consistent with the claimant's physical examination findings, the claimant's routine and conservative treatment, the diagnostic studies, or the claimant's activities of daily living." (PageID.43.) The Court finds the ALJ's reasoning to be supported by substantial evidence. In September 2007, Plaintiff treated with

Dr. Raymond Bohrer for worsening low back pain.[3] He had an antalgic gait, reduced flexion and rotation, and a positive straight leg raise test at 30-40 degrees.[4] (PageID.300.) However, his balance and posture was normal. He had no tenderness at his spine, ribs, or pelvis. A Romberg test was negative.[5] Plaintiff was treated with medication. (PageID.300.) On July 28, 2008, Plaintiff was described as "still working at drywall." He had bilateral lower paraspinal muscle tenderness. He had a positive straight leg raise test at 45 degrees. (PageID.299.) On November 10, 2008, Plaintiff was described as not working because of the pain. He had an antalgic gait, lower muscle tenderness, reduced flexion, a mildly reduce lateral motion, and a positive straight leg raise test. (PageID.298.) Plaintiff was referred to a pain clinic. (PageID.298.)

On November 23, 2009, Plaintiff stated that when taking medication, his pain rated a 3 on a scale of 1 to 10. (PageID.270.) He was described as his grandfather's "primary care giver" for the last eighteen months. (PageID.270.) He stated that he went bowling every other week and regularly watched movies with his sister. (PageID.271.) On December 3, 2009, though he had some decreased range of motion, Plaintiff had a full painless arc of motion in his hip joints and a negative

---

[3] Plaintiff notes that the ALJ incorrectly stated the earliest date of the medical evidence occurred in 2009, rather than 2007. The Court finds this error to be harmless, however, as the record clearly demonstrates the ALJ considered this evidence and accordingly satisfied her obligation to consider all the evidence in the case record. *See* 20 C.F.R. § 404.1520(a)(3).

[4] A straight leg raise test is used for detecting sciatic pain, including disc herniation. David S. Gregory et al., *Acute Lumbar Disc Pain: Navigating Evaluation and Treatment Choices*, AM. FAM. PHYSICIAN, 835–42 (Oct. 1, 2008), *available at* http://www.aafp.org/afp/2008/1001/p835.html.

[5] A Romberg test is a neurological test designed to detect poor balance. *See Romberg Test*, *available at* http://www.mult-sclerosis.org/RombergTest.html (last visited on July 11, 2016). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

straight leg raise test. He had only a mildly positive bowstring sign.[6] (PageID.267.) On December 23, 2009, Plaintiff was given a temporary medial branch block by Dr. Richard Burke. (PageID.281–82.) On January 19, 2010, he was described as having a "good response" to that injection, and underwent a radiofrequency denervation. (PageID.278) A week later, Dr. Burke again described a "good response" to the procedure, although there was "some persistence of left-sided back pain." (PageID.275.) Plaintiff underwent further injections on that date, as well as March 9, 2010. (PageID.273, 276.) On April 23, 2010, however, Plaintiff told Dr. Bohrer that the pain clinic did not help. (PageID.297.)

On August 12, 2010, Plaintiff underwent an MRI of his lumbar spine. The MRI found circumferential disc bulging at the L4-L5 vertebrae. The bulging resulted in "mild narrowing of the left lateral spinal recess and mild neural foraminal encroachment on the left, [and] mild to moderate lower lumbar facet degenerative changes bilaterally." (PageID.205.) There were "small benign appearing fatty rest or hemangloma within the L4 vertebral body." There further was "no significant interval change" from a previous MRI taken on October 24, 2005. (PageID.205.)

Plaintiff began treating with Dr. Warren on September 1, 2010–visiting with her approximately every three months. On the first exam, Plaintiff's back was tender to palpation from T8 to L4 with "very limited range of motion in all directions." (PageID.215.) But he had a negative straight leg raise test, and equal bilateral strength in his lower extremities aside from left foot dorsiflexion. (PageID.215.) Plaintiff was treated with medication, and told to exercise and follow a low salt diet. (PageID.215.) On December 1, 2010, Plaintiff stated his back pain was "a little

---

[6]A test of nerve root tension. *See* DAVID A. WONG & ENSOR TRANSFELDT, MACNAB'S BACKACHE 160–61 (4th ed. 2007).

better" after physical therapy. Exam results were similar to the September visit, including a negative straight leg raise test. (PageID.213–14.) On March 1, 2011, Plaintiff was described as "moving a little slow, but better than before." (PageID.213). Further treatment notes demonstrate that Plaintiff complained of pain due to his grandfather's increased need for care. On June 1, 2011, for example, Plaintiff stated his back pain was back to where it was before physical therapy. He was having to lift his grandfather more, causing increased back pain. (PageID.212.) On February 24, 2012, Plaintiff stated that his grandfather recently needed more assistance. His grandfather had been falling, and also needed help sitting up from bed. Plaintiff took medication which helped with the low back pain, but not with pain in his hip and legs. Dr. Warren noted that the past physical therapy had helped and recommended another course of therapy. She also recommended different methods by which Plaintiff could lift his grandfather. (PageID.208–09.)

   At bottom, the Court finds the ALJ provided good reasons, supported by substantial evidence for giving less than controlling weight to Dr. Warren's opinion. The Court does not doubt that through his date last insured, Plaintiff was limited by his impairments; but the record evidence, thoroughly discussed by the ALJ, does not support Dr. Warren's opinion that Plaintiff was limited beyond that found in the RFC.

   The Court finds Plaintiff's further arguments on this point unavailing. Plaintiff claims the ALJ never explained how the findings were inconsistent with Dr. Warren's opinion, but the ALJ expressly stated how the examinations, diagnostic results, and daily activities were consistent with the RFC, and did not support a showing that Plaintiff was further limited, as Dr. Warren argued. (PageID.42–43.) It was also not error for the ALJ to state that Plaintiff's treatment was "conservative." (PageID.43.) Indeed, as the Commissioner points out, one of

Plaintiff's own physicians found that the diagnostic studies called for only "conservative management." (PageID.290.) The ALJ also did not put a "gloss" on Plaintiff's activities of daily living. As noted above, Plaintiff was the primary care giver of his grandfather, and bowled once every other week. The ALJ did not err in finding Plaintiff's daily activities to be a good reason for discounting Dr. Warren's opinion. *See*, *e.g. Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (ALJ properly considered claimant's daily activities as among the "good reasons" for discounting treating source's opinion); *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 342 (6th Cir. 2008) (same).

Plaintiff finally argues that even if the ALJ provided good reasons for giving less than controlling weight to Dr. Warren's opinion, she still erred in two respects: first, by failing to give deference to Dr. Warren's opinion under SSR 96-2p and the factors articulated in 20 CFR § 404.1527, and second, by improperly substituting her own lay opinion for that of the medical professionals.

Plaintiff correctly notes that even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected, rather the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See* SSR 96–2p, 1996 WL 374188 at *4 (July 2, 1996); 20 C.F.R. § 404.1527(c); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 372 (6th Cir. 2006). Here, the record demonstrates that the ALJ recognized her responsibility under the regulations, noting that she had to consider the opinion evidence in accordance with, among other things, 20 C.F.R. § 404.1527 and SSR 96–2p. (PageID.40.) The Court finds the ALJ adequately considered the factors regarding the opinion evidence, and specifically considered the doctor's

11

opinions against the record. (PageID.43.)  The ALJ found that the proffered restrictions listed in the doctor's opinion were not well supported by objective evidence, and in doing so the ALJ expressly considered several of the factors, including Dr. McDermott's treating relationship with Plaintiff as his primary care provider, and the consistency and supportability of the opinion. (PageID.42–43.)  The Court finds no error here.

Plaintiff's remaining argument fares no better. Plaintiff claims that by rejecting the medical opinions in the record, the ALJ developed an RFC that was not based on any medical opinion, and impermissibly substituted her own lay opinion in the RFC determination. (PageID.375–76.)  When determining a claimant's RFC, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14–CV–236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996)) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). However, when evaluating the claimant's RFC, the ALJ is not required to base her RFC findings entirely on a physician's opinion. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015); *see Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual

functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, after the ALJ provided good reasons for giving less than controlling weight to the opinion of Dr. Warren, the ALJ did not need to seek out another physician's opinion. *See Muscott v. Colvin*, No. CV 14-13890, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2015). Upon review of the medical and non-medical evidence on record, it is clear that there is substantial evidence to support the ALJ's RFC determination limiting Plaintiff to a range of light work. (PageID.40–43.)

Accordingly, for all the above reasons, Plaintiff's claim regarding the ALJ's treatment of Dr. Warren's opinion is rejected.

### 2. The ALJ Properly Considered Plaintiff's Credibility.

At the hearing, Plaintiff testified that he experienced pain in his lower back and legs. (PageID.55.) He testified that he could only remain seated for half an hour before his back would begin hurting and he experienced numbness in his feet and legs. (PageID.56–57.) He would consequently need to stand up and walk around for thirty minutes, but could only alternate between standing and sitting for two hours before needing to lay down. (PageID.57.) Plaintiff contends that the ALJ did not provide sufficient justification for determining that his testimony was not credible.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold

for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

> The ALJ evaluated Plaintiff's credibility as follows:
>
> In terms of the claimant's alleged serious limitations in his ability to perform work-related activity, the evidence and testing does not corroborate the claimant's allegations that his limitations prevent performance of all work related activity.
>
> The undersigned used factors considered under SSR 96-7p in determining the credibility of the claimant's allegations. The claimant described daily activities, which were not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The claimant had no problems with personal care. He took care of his grandfather. The claimant was able to take care of a cat and dog, prepare meals, wash dishes, and do laundry. He was able to drive a car and shop in stores. The claimant enjoyed building model cars and watching television. He visited with family and friends regularly. The claimant regularly went bowling. He tried to walk every day on his doctor's advice. The claimant's reported activities of daily living were consistent with the residual functional capacity set forth herein.

(PageID.42) (internal citations omitted.). It is well established that an ALJ may consider "household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). As noted

above, Plaintiff reported bowling every other week, and was the primary care giver of his grandfather. This latter activity included preparing meals and helping his grandfather sit up in bed and lifting him when he fell. The ALJ did not put a "significant gloss" on this evidence as Plaintiff alleges. (PageiD.374.) Rather the ALJ correctly noted that these activities were inconsistent with Plaintiff's disabling allegations. In addition, as noted in the above discussion of Dr. Warren's opinion, numerous record evidence demonstrates several negative test results and an MRI revealing only mild results. The ALJ did not err in noting how these records did not support Plaintiff's complaints. While the record does show that Plaintiff complained of increased pain on occasion, treatment notes document that these complaints often occurred when Plaintiff's grandfather required increased care–activities in excess of the lifting requirements for light work. (PageID.208–09.) In sum, the Court finds the ALJ's conclusion that Plaintiff's complaints were not entirely credible to be supported by substantial evidence.

## **CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

DATED: July 26, 2016        /s/ Robert J. Jonker
                            ROBERT J. JONKER
                            CHIEF UNITED STATES DISTRICT JUDGE